UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ELIZABETH JOHNSON, Personal
Representative of the Estate of
Michael Renner Lewis, Deceased,

      Plaintiff,

v.                                                                                          Case No. 1:03-CV-917

PARCHMENT SCHOOL DISTRICT,                                HON. GORDON J. QUIST
and KALAMAZOO REGIONAL
EDUCATIONAL SERVICES AGENCY,
CHARLES NICHOLSON, GEORGE C.
STAMUS, JUDY MURPHY, JANA ADAMS,
BRET A. KIEL, DIANE SNYDER,
RONALD FULLER, and CRAIG MINER,

      Defendants.
_____/

## MEMORANDUM OPINION

On April 3, 2006, the Court held a hearing on Plaintiff's motion for approval of the settlement in this case. At the conclusion of the hearing, the Court found that the settlement was fair, reasonable, and in the best interests of the Estate of Michael Renner-Lewis, deceased, but it deferred entry of an order approving the settlement in order to allow the parties to brief the issue of whether the Court was required to publish the amount of the settlement in the order. The Court has received a memorandum from Defendants on the issue. Plaintiff does not oppose the motion. Defendants state, and the Court's own research confirms, that there is no statute or case law, binding or otherwise, which specifically requires the disclosure of the terms of a confidential settlement in a wrongful death case. Of course, there is also no authority supporting the position that the order approving the settlement need not disclose the settlement amount. The absence of any Michigan

statutory directive or controlling case law regarding the contents of the order does not influence the Court's decision one way or the other.

Defendants note that because the Court has inherent power to limit or preclude access to its own orders and other documents in the docket, it may effectively seal the amount of the settlement by omitting it from the order because the parties' interests in preserving the confidentiality of the settlement outweigh the public's right of access to the information. Citing Cincinnati Gas and Electric Co. v. General Electric Co., 854 F.2d 900 (6th Cir. 1988), Defendants contend that, because we are dealing with information that arose out of the settlement process, the Court should conclude that there is an absence of "tradition of accessibility" to settlement information and that access to such information would not play a "significant positive role in the functioning" of the mediation and settlement process.

In Nixon v. Warner Communications, 435 U.S. 589, 98 S. Ct. 1306 (1978), the Supreme Court recognized a common law right of access to judicial records allowing public inspection and copying. See id. at 597, 98 S. Ct. at 1312. When a court considers a request to seal judicial records, it must balance the public's common law right to know against the interests favoring nondisclosure. See id. at 599, 98 S. Ct. at 1312-13. It is true, as Defendants note, that the Sixth Circuit has held that settlement proceedings, such as summary jury trials, "are historically closed procedures" that do "not present any matter for adjudication by the court, but function[] to facilitate settlement." In re Cincinnati Enquirer, 94 F.3d 198, 199 (6th Cir. 1996); see also Cincinnati Gas & Elec., 854 F.2d at 904. However, while there is no right of public access to settlement procedures and negotiations, the issue before the Court involves a settlement agreement rather than the settlement process. As the Sixth Circuit has observed, "there is an important distinction . . . between negotiating a

settlement in the first instance and using court resources to implement a settlement that has already been agreed to." In re S. Ohio Corr. Facility, 24 F. App'x 520, 530 (6th Cir. 2001). Similarly, the Sixth Circuit has stated: "There is a strong public policy in favor of access to judicial proceedings, most particularly as relates to a court's order or decree, embodying a settlement." Friedman v. Mitan (In re Polemar Constr. Ltd. P'ship), 23 F. App'x 423, 425 (6th Cir. 2001). Furthermore, while it may be argued (although Defendants do not do so) that the information concerning the settlement amount is not a judicial record because it was not actually made part of the record, the common law presumption attaches to the information because the Court considered and relied upon it at the hearing in determining whether the settlement was fair and reasonable. See FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987) (concluding that matters submitted to the court were accessible under the right of access doctrine, even though they were not part of the court file, because the court considered them in making its rulings).

Because the settlement information that the Court considered at the April 3, 2006, hearing is part of the judicial record to which the right of access attaches, the Court must weigh the competing interests for and against disclosure. Defendants contend that no significant public interest would be served by disclosing the settlement amount. On the other hand, they argue, the interests weighing against disclosure are: (1) protecting two interested parties who are minors from financial predators; (2) protecting the privacy and reputations of the individual defendants, who are dedicated educators and special educators; and (3) preventing a media frenzy that might lead to a chill on the Court's mediation process. Finally, Defendants note that Plaintiffs do not object to maintaining the settlement amount as confidential.

The Court must recognize at the outset that there is a strong presumption in favor of public access to judicial records. See EEOC v. Nat'l Children's Ctr., Inc., 98 F.3d 1406, 1409 (D.C. Cir. 1996). Bolstering the presumption in this case is the fact that two of the defendants are governmental agencies or bodies that are accountable to the public both in terms of expenditures of public funds and decision-making. A party's status as a public entity thus generally weighs against sealing the record. See In re S. Ohio Corr. Facility, 24 F. App'x at 530 ("The settlement approved by the district court in the case at bar was funded with taxpayer dollars, and the public has a legitimate interest in knowing how this money is being spent."); Nat'l Children's Ctr, Inc., 98 F.3d at 1410 ("The public should be able to learn how the money it has contributed to a charitable organization is being spent. Moreover, because the Center provides services to children and the alleged misconduct by the Center's staff in this case was of a sexual nature, the public interest in disclosure is compelling."); Doe v. Marsalis, 202 F.R.D. 233, 238-39 (N.D. Ill. 2001) (concluding that the public had an interest in documents concerning police misconduct lawsuit because the lawsuit was settled with public funds generated by taxpayers). In this case, the settlement presumably will be paid with taxpayer funds or possibly with insurance proceeds from a policy purchased with public funds, and the conduct at issue concerns a matter within both public entity defendants' functions, namely, educational services for autistic children.

Another consideration that weighs in favor of disclosure is that the settlement amount is the type of information that a citizen may obtain through the Freedom of Information Act ("FOIA"), M.C.L.A. § 15.231, et seq. "There is no specific FOIA exemption for settlement agreements." Huron Restoration, Inc. v. Bd. of Control of E. Mich. Univ., No. 203719, 1999 WL 33455136, at *1 (Mich. Ct. App. Jan. 22, 1999) (per curiam). See also Booth Newspapers, Inc. v. Kalamazoo Sch.

Dist., 181 Mich. App. 752, 756-57, 450 N.W.2d 286, 288 (1989) (holding that the circuit court properly ordered disclosure of a settlement agreement between a teacher and the school district with redaction of the identities of the persons involved in the alleged sexual misconduct in accordance with FOIA's privacy exemption). Moreover, "[a] public institution cannot prevent disclosure by contracting away the public's rights under the FOIA." Huron Restoration, Inc., 1999 WL 33455136, at *1. In Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994), the court held that "where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law." Id. at 791. Defendants do not assert that the settlement amount would be exempt from disclosure under Michigan's FOIA law, nor do they explain why the Court should disregard the strong presumption in favor of disclosure of information covered by FOIA.

      Finally, as the Court noted at the April 3rd hearing, omitting the settlement amount from the order approving the settlement would likely be a futile measure because the Wrongful Death Statute requires that the personal representative provide notice of the hearing regarding distribution of the settlement proceeds to interested persons and, as Defendants' counsel conceded, the notice would need to include the amount of the settlement. See M.C.L.A. § 600.2922(6). Moreover, as the Court understands it, the issue of distribution of the proceeds to the heirs in this case may be contested, and it is likely that the settlement amount would be disclosed during the distribution hearing and made a part of the record in any event.

      In light of the substantial weight of the considerations in favor of public access, the Court concludes that the considerations Defendants cite in favor of confidentiality are insufficient to

overcome the presumption in favor of public access. First, with regard to the protection of the minors from financial predators, there are other means of providing such protection, such as through appointment of a guardian to conserve any award to the minors. Moreover, omitting the amount of the settlement from the order would likely have little deterrent effect because any distribution to, or for the benefit of, the minors would be a matter of record as part of the order regarding distribution to the heirs.

Second, while the individual Defendants certainly have an interest in not being associated with wrongdoing in an educational setting, the Court finds that such concerns are tenuous. That is, the individual Defendants' identities and the alleged wrongdoing have been disclosed through the pleadings and other papers filed in this lawsuit and, in any event, the public will know that the parties have settled the claims. The Court notes that, although it did not decide Defendants' motions to dismiss or for summary judgment, Defendants raised various defenses which ultimately may have defeated some or all of Plaintiff's claims. Defendants state that in light of their potential defenses, the settlement is not based upon an absence of merit in their positions, and they suggest that disclosure of the settlement amount might lead the media and/or the public to conclude that the settlement was prompted solely by concern for potential liability. While it may be true that confidentiality was a factor in Defendants' decision to agree to what they believed was an amount in excess of the true settlement value of the case, nothing about the settlement indicates that it was gratuitous or merely a nuisance value settlement. Like many settlements, it is reasonable to assume that the number reflects at least some degree of uncertainty that this Court (and perhaps the Sixth Circuit) might have rejected Defendants' defenses and that a jury would have found in favor of Plaintiff. In any event, because the public and the media will not be informed of the parties'

settlement positions and negotiations, it is just as likely that omission of the settlement amount would foster as much speculation as disclosure; it might be assumed, for example, that confidentiality was sought because liability was substantial and the settlement amount was significant. On the other hand, disclosure of the settlement amount, without knowledge of other details about the case, such as the strengths and weaknesses of Plaintiff's claims and Defendants' defenses and the reasonable settlement value of the case, would not shed much light upon Defendants' culpability.

Finally, the Court gives little weight to Defendants' suggestion that disclosure will chill the Court-endorsed mediation process. As Defendants' counsels know, this district's voluntary facilitative mediation ("VFM") program has been very successful as a means of resolving cases on the civil docket in an expeditious and cost efficient manner. Confidentiality of settlement terms is seldom an issue that this Court faces in connection with VFM settlements, because in the vast majority of cases, the Court is not required to approve the settlement. This case is an exception because it is governed by a specific statute which requires the Court to approve the proposed settlement. Moreover, even among the wrongful death subset of cases, this case is exceptional because it involves two public bodies, as to which the public's interest in access to judicial proceedings and records is especially strong. Finally, while the Court has no doubt that confidentiality was an important consideration to Defendants, the Court notes that at the April 3rd hearing, Defendants' counsel advised the Court that the settlement would stand regardless of the Court's decision to publish the settlement amount.

Accordingly, for the reasons set forth above, the Court will publish the amount of the settlement in its order approving the settlement.

Dated:  May 5, 2006                              /s/ Gordon J. Quist
                                                  GORDON J. QUIST
                                                  UNITED STATES DISTRICT JUDGE